UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| TREINA MCCOO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:24-CV-00714 SPM |
| | ) | |
| BJC HEALTH SYSTEM, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**OPINION, MEMORANDUM AND ORDER**

Before the Court is self-represented plaintiff Treina McCoo's motion to proceed in forma pauperis. [ECF No. 2]. After reviewing plaintiff's financial information, the Court will grant plaintiff's motion to proceed in forma pauperis. Based on the reasoning set forth below, plaintiff will be required to amend her complaint on a Court-provided form within twenty-one (21) days from the date of this Memorandum and Order. Plaintiff's failure to do so will result in dismissal of this action, without prejudice.

**Legal Standard on Initial Review**

Under 28 U.S.C. § 1915(e)(2), the Court is required to dismiss a complaint filed in forma pauperis if it is frivolous, malicious, or fails to state a claim upon which relief can be granted. To state a claim, a plaintiff must demonstrate a plausible claim for relief, which is more than a "mere possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678. Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw upon judicial experience and common sense. *Id*. at 679. The court must "accept as

true the facts alleged, but not legal conclusions or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Barton v. Taber*, 820 F.3d 958, 964 (8th Cir. 2016). *See also Brown v. Green Tree Servicing LLC*, 820 F.3d 371, 372-73 (8th Cir. 2016) (stating that court must accept factual allegations in complaint as true but is not required to "accept as true any legal conclusion couched as a factual allegation").

When reviewing a pro se complaint under § 1915(e)(2), the Court must give it the benefit of a liberal construction. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). A "liberal construction" means that if the essence of an allegation is discernible, the district court should construe the plaintiff's complaint in a way that permits his or her claim to be considered within the proper legal framework. *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015). However, even pro se complaints are required to allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980). *See also Stone v. Harry*, 364 F.3d 912, 914-15 (8th Cir. 2004) (stating that federal courts are not required to "assume facts that are not alleged, just because an additional factual allegation would have formed a stronger complaint"). In addition, affording a pro se complaint the benefit of a liberal construction does not mean that procedural rules in ordinary civil litigation must be interpreted so as to excuse mistakes by those who proceed without counsel. *See McNeil v. United States*, 508 U.S. 106, 113 (1993).

## The Complaint

Plaintiff Treina McCoo filed this pro se employment discrimination action on May 21, 2024. [ECF No. 1]. She brings this action pursuant to Title VII of the Civil Rights Act of 1964 (Title VII), as amended, 42 U.S.C. §§ 2000e, *et seq.*, the Age Discrimination in Employment Act of 1967, (ADEA), 29 U.S.C. §§ 621, *et seq.* and Title 42 U.S.C. § 1981 (§ 1981 action). Named as defendants are BJC Health System, doing business as BJC Health Care, as well as individual

supervisors at BJC: Sophia Easterling; Cassandra Wallace; Carolyn Standiford; and Alexandrea Elmore. [ECF No. 1]. The complaint is typewritten.

Plaintiff brings claims for race and age discrimination in the terms and conditions of her employment, as well as retaliatory discharge under Title VII and the ADEA. Plaintiff also appears to be bringing a race discrimination claim under § 1981 relating to the terms and conditions of her employment, as well as a retaliation claim relating to her discharge. Last, plaintiff brings what are presumably state law claims for "wrongful termination, workplace violence, emotional distress damages, and defamation of character."

Plaintiff states that she was employed at BJC from 1988 until 2000 at BJC, whereupon she left her employment, and then she returned to work at BJC in November of 2021. [ECF No. 1, p. 2]. She asserts that she began work at BJC as a childcare educator, later became an Emergency Medical Technician, and later became a Registered Nurse (RN), and took on the job as an Assistant Nurse Manager. *Id*. She states that she worked at various locations at BJC throughout Missouri and Illinois. *Id*.

Plaintiff complains that due to her race and her age, she was discriminated against by being given the responsibility for three office locations, which was "unprecedented," and although promoted, she lacked necessary training and was given an excessive workload. [ECF No. 1, p. 2]. She makes the conclusory allegation that BJC was a difficult place to work for African Americans, and that BJC had trouble retaining African American employees. *Id*.

In late 2021, plaintiff claims she was accused by an individual named Cassandra Wallace who was supposed to be training her, of "stealing time." *Id*. She asserts that she "inadvertently" discovered a zoom-recorded meeting wherein she was the topic of conversation of unnamed white managers who were discussing how they could get rid of plaintiff and another black employee.

3

Plaintiff claims that the topic of the meeting was that even though several of the managers acknowledged they had failed to train plaintiff as to her job duties, she was still catching on to the job. The implication, according to plaintiff, was that they needed to get rid of her because their plan was not working. *Id.*

Plaintiff complained about the recorded meeting to an individual named Elizabeth Schickler and told her that it appeared to be discriminatory due to her race and age. *Id*. Plaintiff also relayed other racial issues that had arisen at work, however, she indicated that she had "no desire to address the racial issues, [she] just wanted to be trained and do [her] job." Plaintiff asked to join the diversity team, and she did so. *Id.*

Shortly after plaintiff's meeting with Schickler, plaintiff was given a letter of expectations from Sophia Easterling. Plaintiff maintains that she was meeting all the expectations on the list at that time, and in fact, she had previously received recognition for her work from parents, patients and family/caregivers. *Id.* After being given the letter of expectations, plaintiff started suffering retaliation. She claims that a white medical assistant was given more authority than her. However, plaintiff does not explain what she means in relation to this claim. Additionally, an "issue was made by [an unnamed] defendant over minor things such as having to get a refund on an order of gloves – a mistake which others had made and which cost BJC nothing." Meanwhile, plaintiff states that she fulfilled everything on the letter of expectations and did so with no negative feedback or suggestions for improvement. *Id.*

Plaintiff claims that she was summarily terminated on January 30, 2023, without progressing through disciplinary steps. Plaintiff alleges she was terminated the day prior to an age-related eye surgery she was scheduled to be out for.

Plaintiff seeks damages in this action against defendants.

4

**Discussion**

Plaintiff Treina McCoo filed this employment discrimination action on May 21, 2024. [ECF No. 1]. As set forth above, plaintiff McCoo attempts to bring this action pursuant to Title VII of the Civil Rights Act of 1964 (Title VII), as amended, 42 U.S.C. §§ 2000e, *et seq.,* the Age Discrimination in Employment Act of 1967, (ADEA), 29 U.S.C. §§ 621, *et seq.* and Title 42 U.S.C. § 1981 (§ 1981 action). Named as defendants are BJC Health System, doing business as BJC Health Care, as well as individual supervisors at BJC: Sophia Easterling; Cassandra Wallace; Carolyn Standiford; and Alexandrea Elmore. [ECF No. 1].

As noted above, the complaint is not filed on the Court's Employment Discrimination Form. *See* Local Rule 2.06(A). As an exhibit to the Court-provided form, plaintiff will be required to provide the Court with copies of her Notice of Right to Sue from the Equal Employment Opportunity Commission (EEOC), as well as the Charge of Discrimination from either the EEOC or the Missouri Commission on Human Rights (MCHR),[1] so that the Court may determine if plaintiff has adequately exhausted her administrative remedies with respect to the Title VII and ADEA claims in her amended complaint.[2] Additionally, because there are several pleading

---

[1] Missouri is known as a "dual-filed" state, meaning that because Missouri has its own laws prohibiting discrimination, as well as agencies enforcing such laws, a litigant can file an administrative charge with either the state "Fair Employment Practice Agency (FEPA)" or the EEOC. Although usually the agency where the charge is filed will retain the charge for processing, data may be shared between the offices. *See* April 9, 2021, *EEOC Order 750.001A: FEPA Data-Sharing Policies and Practices.*

[2] Title VII and the ADEA require that an administrative claim be filed and resolved prior to bring a judicial action on the same claim. *See Richter v. Advance Auto Parts, Inc.,* 686 F.3d 847, 850 (8th Cir. 2012); 42 U.S.C. § 2000e-5(e)(1); See 42 U.S.C. § 12117(a) (incorporating by reference 42 U.S.C. § 2000e-5(e)(1) outlining charge requirements); *Shelton v. Boeing Co.,* 399 F.3d 909, 912 (8th Cir. 2005). In other words, the claims plaintiff asserts in the instant federal complaint must be like or reasonably related to the claims outlined in her charge of discrimination, or they will be subject to dismissal for failure to exhaust administrative remedies. *See Duncan v. Delta Consolidated Indus., Inc.,* 371 F.3d 1020, 1024 (8th Cir. 2004).

deficiencies in the complaint, the Court will require plaintiff to amend her pleading in this action within twenty-one (21) days of the date of this Memorandum and Order.

For example, plaintiff has listed several individuals as defendants in this action. However, Title VII and the ADEA only provide a remedy against an employer. *See Bonomolo-Hagen v. Clay Central-Everly Cmty. Sch. Dist.,* 121 F.3d 446, 447 (8th Cir. 1997) (citing *Spencer v. Ripley Cty. State Bank*, 123 F.3d 690, 691-92 (8th Cir. 1997)); *see also Bales v. Wal-Mart Stores Inc.,* 143 F.3d 1103, 1111 (8th Cir. 1998).[3] As a result, the individual defendants named in the action are subject to dismissal from the complaint *under these statutes*.[4]

Furthermore, the Court notes that because plaintiff's complaint is pro se and typewritten, the complaint is far from clear. For this reason, the Court will take time to enumerate race

---

[3]Because Title VII and the ADEA are treated analogously, district courts in the Eighth Circuit have determined that there is no individual liability under the ADEA, even though the Court of Appeals itself has not ruled on the issue. *See White v. Ameren*, 2022 WL 16649507, at *3 (E.D. Mo. 2022) (dismissing ADEA claim against individual for failure to state a claim); *Drowns v. Village of Oakview Board of Trustees,* 2022 WL 17489951, at *4 (W.D. Mo. 2022) (finding that individual employee was not subject to liability under ADEA); *Bartunek v. eFrame, LLC*, 2016 WL 5854215, at *1 (D. Neb. 2016) (applying Title VII rule that liability cannot be imposed on individual supervisors or co-workers to ADEA claim); and *Wortham v. Am. Family Ins. Co.,* 2002 WL 31128057, at *4 (N.D. Iowa 2002) ("While the Eighth Circuit has not explicitly decided the issue, relevant case law strongly suggests that it would conclude that there is no individual liability under the ADEA"). In addition, several other Circuits have reached the same conclusion that there is no individual liability under the ADEA. *See Birkbeck v. Marvel Lighting Corp.,* 30 F.3d 507, 510 (4th Cir. 1994) (explaining that under the ADEA, "personal liability would place a heavy burden on those who routinely make personnel decisions for enterprises employing twenty or more persons, and we do not read the statute as imposing it"); *Stults v. Conoco, Inc.,* 76 F.3d 651, 655 (5th Cir. 1996) (holding "that the ADEA provides no basis for individual liability for supervisory employees"); *Csoka v. U.S. Government*, 94 F.3d 647, 1996 WL 467654, at *5 (7th Cir. 1996) (unpublished opinion) ("The ADEA, like Title VII, does not authorize individual liability claims against…employees"); *Miller v. Maxwell's Int'l,* 991 F.2d 583, 587 (9th Cir. 1993) (stating that "[i]f Congress decided to protect small entities with limited resources from liability, it is inconceivable that Congress intended to allow civil liability to run against individual employees"); and *Smith v. Lomax*, 45 F.3d 402, 403 n.4 (11th Cir. 1995) (noting that two individuals sued under the ADEA could not be liable because plaintiff was employed by the county).

[4]Plaintiff may, of course, pursue claims against individual defendants for discrimination and retaliation under 42 U.S.C. § 1981. *CBOCS West, Inc. v. Humphries*, 553 U.S. 442, 446 (2008). She should clarify that she is seeking claims against the individual defendants only under 42 U.S.C. § 1981 for race discrimination and/or retaliation in her amended complaint.

discrimination claims under Title VII and 42 U.S.C. § 1981, as well as an age discrimination claim under the ADEA. The Court will also address plaintiff's additional claims for relief.

For example, to allege a race discrimination claim under Title VII, plaintiff must allege that she is a member of the protected class, she was meeting the employer's legitimate job expectations, she suffered an adverse employment action and was treated differently than similarly situated employees who were not members of her protected class. *Jackman v. Fifth Judicial Dist. Dep't. of Corr. Servs.,* 728 F.3d 800, 804 (8th Cir. 2013). Thus, not only must plaintiff articulate in her amended complaint what her race is, how she was racially discriminated against, and how she believes she was meeting the employer's legitimate job expectations, but she should also articulate in her amended complaint how she believes she was treated differently than those who were not of her same race but were not terminated or disciplined for acting similarly.

"The ADEA prohibits employers from discriminating against any individual on the basis of age with respect to his or her compensation, terms, conditions, or privileges of employment." *Jankovitz v. Des Moines Indep. Cmty. Sch. Dist.,* 421 F.3d 649, 652 (8th Cir. 2005). *See also Rahlf v. Mo-Tech Corp., Inc.,* 642 F.3d 633, 636 (8th Cir. 2011) (stating that the "ADEA prohibits discrimination against employees, age 40 and over, because of their age"); and *Kneibert v. Thomson Newspapers, Michigan Inc.,* 129 F.3d 444, 451 (8th Cir. 1997) ("The ADEA prohibits an employer from discharging any individual or otherwise discriminating against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age"). In order to establish a prima facie case under the ADEA, a plaintiff must demonstrate she is a member of the protected class (over 40 years of age); she was qualified for the position; she suffered an adverse employment action; and similarly-situated employees outside the class were treated more favorably. *Anderson v. Durham, D&M, L.L.C.,* 606 F.3d 513, 523 (8th

7

Cir. 2010) (internal citation omitted). Plaintiff has not articulated her age in her complaint, so she should take care in her amended complaint to designate that she is over the age of 40, she was qualified for her position at BJC, she suffered an adverse employment action, such as termination of her employment or demotion, and a similarly situated employee who was under the age of 40 was treated more favorably than her.

With respect to her claim of race discrimination and/or retaliation under 42 U.S.C. § 1981, plaintiff must also properly allege a prima facie case in her amended complaint under that statute as well. Title 42 U.S.C. § 1981 provides in pertinent part:

> All persons . . . shall have the same right . . . to make contracts, to sue, be parties, give evidence, and to full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

The Supreme Court recently clarified that a § 1981 plaintiff "must initially plead and ultimately prove that, *but for race,* it would not have suffered the loss of a legally protected right." *Comcast Corp. v. Natl'l Assoc. Afr. Am.-Owned Media,* 140 S. Ct. 1009, 1019 (2020) (holding that a § 1981 plaintiff must prove that their race was a but-for cause of the discriminatory action) (emphasis added); *see also Bostock v. Clayton Cnty.,* 140 S. Ct. 1731, 1739 (2020) (explaining events may have more than one but-for cause). A plaintiff establishes a prima facie case under § 1981 by showing (1) membership in a protected class; (2) the intent to discriminate on the basis of race on the part of the defendant; and (3) discrimination interfering with a protected activity (i.e., the making and enforcement of contracts). *Bediako v. Stein Mart, Inc.,* 354 F.3d 835, 839 (8th Cir.2004). Plaintiff does not have to plead in her complaint that race was the only factor in her termination, but that it was at least one factor that was the "but for" cause of race discrimination

As for retaliation, which it appears that plaintiff is alleging under both Title VII and § 1981, plaintiff must also properly allege these claims under both statutes. The Court notes that although

8

Title VII prohibits retaliation against an employee "because [s]he has opposed any practice made an unlawful employment practice by [Title VII], or because [s]he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]," not every adverse employment action can be considered retaliation under Title VII. 42 U.S.C. § 2000e-3(a).

To establish a prima facie case of Title VII retaliation, plaintiff must show that: (1) she engaged in protected conduct; (2) she suffered a materially adverse employment action; and (3) the adverse action was causally linked to the protected conduct. *Jackman*, 728 F.3d at 804 (characterizing "termination, cuts in pay or benefits, and changes that affect an employee's future career prospects" as adverse employment actions). "An adverse employment action is a tangible change in working conditions that produces a material employment disadvantage." *Clegg v. Ark. Dep't of Corr.,* 496 F.3d 922, 926 (8th Cir. 2007). It appears that plaintiff's retaliation claim relates to her discharge only. If plaintiff is also asserting a claim of retaliation based on a change in the terms and conditions of her employment, she will need to explicitly state such in her amended complaint.

Plaintiff next asserts in her complaint that she is alleging a cause of action for "wrongful termination" under Missouri law. However, she has failed to indicate the statutory basis for her claim in the body of her complaint. Judges within both this Court and the United States District Court for the Western District of Missouri agree that the Missouri Whistleblower's Protection Act, the Missouri Human Rights Act (MHRA), and the Missouri Workers' Compensation Law appear to be the exclusive means to pursue all claims of unlawful employment practices in Missouri. *See Cooksey v. All. Bank,* No. 1:20-cv-219-SNLJ, 2021 WL 2187911, at *4 (E.D. Mo. May 28, 2021) (quoting Mo. Rev. Stat. § 285.575.3) (dismissing common-law wrongful-discharge claim); *Abts v.*

9

*Mercy Health*, 4:19-cv-02768-JCH, 2020 WL 2308413, at *5 (E.D. Mo. May 8, 2020), *reconsideration denied*, 4:19-cv-02768-JCH, 2020 WL 3469357 (E.D. Mo. June 25, 2020) ("Count III [common-law wrongful-discharge claim] is precisely the sort of claim explicitly abrogated by statute, and is therefore barred by Missouri law and must be dismissed."); *Mucci v. St. Francois Cnty. Ambulance Dist.*, 4:19-cv-01868-NCC, 2019 WL 6170721, at *5 (E.D. Mo. Nov. 20, 2019) (dismissing common-law wrongful-discharge claim because "the [Act] explicitly replaces the common law cause of action"); *see also Huskey v. Petsmart, Inc.,* No. 18-00813-CV-W-NKL, 2019 WL 122873, at *2 (W.D. Mo. Jan. 7, 2019) ("[I]n Missouri, damages arising from the employment relationship cannot be redressed except through the specified statutes."); *Francis v. Compass Group USA, Inc*, 572 F.Supp.3d 706, 710-11 (E.D.Mo. Nov. 16, 2021). To the extent plaintiff is pursuing an MHRA claim, plaintiff must explicitly state such in her amended complaint.

Moreover, although plaintiff has not indicated that she is pursuing a claim under the MHRA, *see* Mo.Rev.Stat. §§ 213.010 *et seq.*, which is the Missouri analog to the federal Title VII statutory scheme, it appears plaintiff's claims for "workplace violence, emotional distress damages, and defamation of character" could be subsumed within either the MHRA or under a hostile work environment Title VII claim.[5] Plaintiff has not articulated the basis for these claims except to state: (1) that she was "accused of stealing time" and (2) "sent [on] goose chases across state line." Because it appears as though plaintiff's claims for defamation, emotional distress and "workplace violence" arise out of her employment relationship, and not after her employment was terminated, these claims appear to be more akin to a hostile work environment claim under either Title VII or the MHRA, such that they would be preempted. *See, e.g., Matthews v. Syncrean.us, Inc.*, 20-CV-6140-SRB, 2020 WL 6538332, *4 (W.D.Mo. Nov. 6, 2020) (finding that as to a

---

[5]The Court makes no observation as to whether plaintiff brought such a claim within her Charge of Discrimination.

fraudulent joinder claim a "state court might find that the MHRA only preempts common law torts which are specific to an employee-employer relationship."); *see also McBride bv. AgXplore Intl., LLC, et al.,* 1:21-CV-41 SNLJ, 2021 WL 4819576, *2-3 (E.D. Mo. Oct. 15, 2021).

For example, for a plaintiff to prove a defamation claim that is not preempted (or is outside the scope of the employee-employer relationship), a plaintiff must show: (1) publication, (2) a defamatory statement; (3) that identifies the plaintiff; (4) that is false; that is published with the requisite degree of fault; and (5) damages. *Farrow v. St. Francis Med. Ctr.,* 407 S.W. 3d 579, 598-99 (Mo. banc 2013). Publication is the communication of the defamatory statement to a third person. *Nazeri v. Missouri Valley College*, 860 S.W.2nd 303, 313 (Mo. banc 1993). However, communications between officers of the same corporation in the due and regular course of the corporate business, or between different offices of the same corporation, are not publications to third persons. *Rice v. Hodapp*, 919 S.W.2nd 240, 243 (Mo. banc 1996) (quoting *Hellesen v. Knaus Truck Lines*, 370 S.W.2nd 341, 344 (Mo. 1963)). Plaintiff has not properly alleged that she was subjected to a defamatory statement that was publicly communicated.

And for a plaintiff to properly allege a claim of intentional infliction of emotional distress in Missouri, a plaintiff must plead: (1) the defendant acted intentionally or recklessly; (2) the defendant's conduct was extreme and outrageous; and (3) the conduct caused severe emotional distress resulting in bodily harm. *Diehl v. Fred Weber, Inc.,* 309 S.W.3d 309, 321 (Mo. Ct. App. 2010) (internal citations omitted). Plaintiff has not properly alleged that she was subjected to bodily harm.

To the extent plaintiff believes she has standalone claims for relief, she must properly plead such claims in her amended complaint to show that they do not arise from the employee-employer relationship.

Given the aforementioned issues in the original complaint, the Court will require plaintiff to amend her pleading on a Court Employment Discrimination Complaint form. In completing the amended complaint, plaintiff must follow Rules 8 and 10 of the Federal Rules of Civil Procedure. Her self-represented status does not excuse her from following the Federal Rules of Civil Procedure or the Local Rules of this Court. *See Ackra Direct Mktg. Corp. v. Fingerhut Corp.*, 86 F.3d 852, 856-57 (8th Cir. 1996). Rule 8 requires plaintiff to set forth a short and plain statement of the claim showing entitlement to relief, and it also requires that each averment be simple, concise, and direct. Rule 8(a)(2) sets forth a "notice pleading standard" and simply requires "a short and plain statement of the claim showing that the pleader is entitled to relief." "Such a statement must simply give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002).

Rule 10(b) requires plaintiff to state her claims in separately numbered paragraphs, each limited as far as practicable to a single set of circumstances. Each count shall then set forth in separate, numbered paragraphs: 1) the relevant facts supporting the claim; 2) the constitutional, statutory, or other right that defendant violated; and 3) the relief plaintiff seeks for the claim (for example, money damages or equitable relief). Plaintiff shall follow the same format with respect to each claim. In stating the facts of a claim, plaintiff must describe the conduct she alleges is unlawful and the date(s) such conduct occurred, if known. In other words, plaintiff must describe the adverse employment action(s) she believes was taken, when it was taken, why it amounted to discrimination or other unlawful conduct, and the basis for such discrimination or unlawful conduct, that is, race, disability, etc. As noted above, if she believes she was discriminated against based on her race or other protected status, she must note her race on the face of her amended complaint.

The Court will direct the Clerk of Court to provide plaintiff with an Employment Discrimination Complaint form, and plaintiff will have twenty-one (21) days from the date of this Memorandum and Order to file an amended complaint on the form provided. The amended complaint must be signed under penalty of perjury and completed in accordance with the instructions provided in the form as well as the instructions provided in this Memorandum and Order. Plaintiff is cautioned that the filing of an amended complaint completely replaces all earlier filed complaints in this action. Claims that are not realleged are deemed abandoned. *E.g., In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922, 928 (8th Cir. 2005).

After the filing of plaintiff's amended complaint, the Court will review the amended complaint pursuant to 28 U.S.C. § 1915 for frivolousness, maliciousness and/or failure to state a claim. A claim must survive § 1915 review for plaintiff to proceed in this lawsuit.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion to proceed in forma pauperis [ECF No. 2] is **GRANTED.**

**IT IS FURTHER ORDERED** that the Clerk of Court shall mail plaintiff a Court-provided form for filing an Employment Discrimination Complaint.

**IT IS FURTHER ORDERED** that plaintiff shall file an amended complaint, within **twenty-one (21) days** of the date of this Order, on the Court-provided Employment Discrimination Complaint form in accordance with the instructions set forth in that form and in this Memorandum and Order. Plaintiff shall attach to her amended complaint a copy of her EEOC Notice of Right to Sue and Charge of Discrimination from either the EEOC or MCHR.

13

**IT IS FURTHER ORDERED** that if plaintiff fails to timely file her amended complaint, in compliance with this Court's Order, this case will be dismissed, without prejudice.

Dated this 24th day of May, 2024.

                                            HENRY EDWARD AUTREY
                                            UNITED STATES DISTRICT JUDGE